Good morning. If it pleases the Court, the Petitioners' Council presents the case of Buriaja v. Holder. Buriaja is a national of Indonesia of Chinese ethnicity, and given the case background... Ms. Koh, if you could speak up just a little bit. There is a... yeah, there you go. Is it better now? Yeah. All right. Buriaja is a national of Indonesia and had suffered major... a major attack in Indonesia, and the case that presents itself involves issues of due process violation, and the Petitioner maintains its position that the Petitioner, during the process of his presentation of the immigration court hearing, the immigration judge acted as a partisan adjudicator and not as a neutral fact finder, and also the immigration judge speculated about the facts of the case instead of based on the record of proceedings. Also, the beatings suffered by Buriaja, which resulted in a broken nose, broken legs and arms, hospitalization, permanent scars, we maintain that that is sufficient to warrant a finding of past persecution. Well, just a minute. If we're going to talk about past persecution, let me ask you, it's my understanding that the only thing that's in front of us, the only two things that are in front of us are withholding and cat relief, correct? That is correct, Your Honor. And if we're looking about past persecution, where in the opinion does the IJ address past persecution? I read all the way through the IJ's opinion and I couldn't even find the words past persecution. Yes, Your Honor, that's why we argue that the IJ came to a conclusion that my client was not qualified for withholding without any further analysis. Well, but I guess what I'm trying to say is if he doesn't address past persecution, then I don't know whether to give you any presumption or not, do I? If you don't have the presumption or if you do, if you don't have it, then you've got a little bit extra work to do on future persecution. If you don't have, if you have the presumption, then the government has a little more work to do. So are you suggesting what the IJ had done on that? What we maintain is that the evidence in the record clearly establishes past persecution, but the judge did not recognize it as such that the burden had shifted to the government to rebut the presumption. Well, there's no reason to shift it to the government if the IJ doesn't say there's no past persecution. Well, that in itself we believe is an error in the decision. So are you asking us to remand for the government or for the IJ to tell us whether there is past persecution? Yes, Your Honor. Is that what you're really doing? Yes, Your Honor. Supposing that he found there was no past persecution, is there any way that your client can win this on future persecution? Yes, Your Honor. Based on the Wakari v. Holder case and also the case of, there's also a Tampupolon case, which is a subsequent case dealing with Indonesian Christians in Indonesia. So you're really saying that the way you win future persecution is the systematic pattern or practice of persecution? No, Your Honor. It's the disfavored group analysis where the ---- Well, I understand, but that really goes under the systematic pattern, doesn't it? Practice against a group. I would say it is actually a lower standard than a systematic practice because you are weighing up two issues, and it's not just a pattern, but it's whether there's a mistreatment of the group balanced with individual harm that is suffered. So I would say it's like a lower standard. Okay. So if I'll go with that, then you're not saying he'd be singled out individually for persecution? I would say that it's one component of the total analysis. So whether he's singled out, that in itself balanced with how the group, the Chinese-Indonesian group, is mistreated as a whole, and that's what the disfavored analysis is about. I know that the government ---- If we go with that analysis, how do I deal with this idea that he's got family over there that are living there, that are doing what they need to do and have no problem? Your Honor, that is where I believe that the facts of the case based on the oral decision compared to the facts presented by the Petitioner varies, because if you look at the facts of the case as presented by the Petitioner, the Petitioner's mother's church suffered damage and also threats from the native Indonesians. So there is actually nothing in the record that states that the Petitioner suffered or the family members had no problems. Well, but I looked through there, and I guess I'm still having a tough time finding that there is no substantial evidence that the family continues to live unharmed in Indonesia. The problem is actually there were threats made to the mother's church. So on account of their religion, there was stoning and rock throwing during their ---- To their family? Yes. Well, where was that in the record? That is in Administrative Record, page 49. Forty-nine? Yes. All right. I'll write that down, because I looked through, and it seemed to me that that's what the IJ said, that the family continues to live unharmed in Indonesia. I'm not sure I can go too much on his relocation elsewhere. Yes. But I'm worried about that particular matter. There is further evidence, actually also Administrative Record 80-81, the mother's church experienced problems such as stones and rocks thrown at the church during prayer meetings. Also Administrative Record 79. I'm having a hard time squaring those citations that you're giving us with the IJ's finding at 49 and 50 that because there was no harm, it constituted harassment, no question about that. But because nobody was harmed, that's insufficient evidence to establish persecution. And I also find in the same citation that the ---- on page 50, that the immigration judge characterized the street robbery as an isolated instance, in essence a robbery as opposed to persecution. Yes, Your Honor. I'm sorry. It's Administrative Record 79, 80, and 81, where the Petitioner presents the facts regarding his mother's church. I apologize. 49 and 50 was about the judge's opinion regarding those facts. But it's his opinion based on the testimony at 79 and 80, is it not? 79 and 80, Your Honor, if I could refer to the record. Sure, sure.  Counsel, I tell you what, you're almost out of time. Yes. Why don't you ---- why don't we hear from the government? Okay. That will give you some time. Okay. And then I'll ---- we'll let you pick up where you left off here on your phone. Okay. Okay. Thank you. Thank you. Good morning, Your Honors. Ann Wellhoff, a respondent, Attorney General Holder. May it please the Court. As Your Honor, Smith, I want to point out first this case's factual issues involving the substantial evidence standard, extremely deferential. I do believe the finding of past persecution is important because that is the finding that will control burden of proof in this case. And, Your Honor, I understand your point that you don't see the magic words of past persecution. Often these I.J. decisions aren't as articulate as we would like, but I do believe the finding  Well, frankly, I'll be fair with you. I don't think this I.J.'s decision is as articulate as the best or even the worst. I mean, this is the most uncomprehendable decision I've come across for a long time. So I'm looking pretty straight at this because I want to see what has happened on past persecution or what the I.J.'s going to say because I don't have a lot to say about that if the I.J. doesn't say something about it because the BIA didn't help me out. They just affirmed. So at that point, if I don't find any past persecution, then I guess I'm trying to figure out when the I.J. is discussing the incidents happening to the petitioner, are they in the context of past persecution? Are they in the context of an account on a protected ground? Your Honor, I believe there – first, I do believe there is a finding of no past persecution. I would direct the Court to the sixth page of the opinion, the paragraph that starts Respondent does remain eligible to apply for withholding. Yeah. Okay. And if you go down, according to his testimony, which this Court deems credible, Respondent did experience some harassment when native Indonesians would consistently ask him for money. Right. And in addition, it appears his family suffered some harassment when they were holding church services at home during the week. Now, he's talking about the 1998 and 2000 testimony or incidents. Right. However, Respondent explained that his family lives there in the era of Muslim believers. Perhaps holding those church services in their midst did offend them and cause them to throw rocks. However, no one was ever harmed, and this amounts to no more than harassment. There's a plethora of case law in this Court and others that say this mere harassment doesn't count – does not constitute past persecution. Now, I wish the IJ had been a little clearer and said, you know, therefore, it isn't past persecution. But I think that that ruling can very clearly be gleaned here. As you go on, he'll say he talks significantly about the past harm and just continuously calls it harassment or random violence. Those are – that's his finding without the magic buzzwords that I do agree should have been there. But I think the finding is there. He talks about – So you're saying that he found no past persecution, and so then, of course, with that finding you want me to go to, that would, of course, give the Petitioner a greater burden. That's correct, Your Honor. It would. And I believe that – That seems to be something the government would argue. I believe that we could argue that, and I do argue that. And I believe that the finding of the immigration judge, again, they – I do think some of this opinion – there's a sentence in this opinion where he says the law regarding asylum and withholding and whatnot, he incorporates in this document by reference that sort of canned law because he's reading this document. Well, the reason I'm a little worried about that is that I can't tell if the IJ is suggesting that it didn't suffer from past persecution because it didn't rise to the level of persecution or that it was not on the account of a protected ground, because if the IJ is suggesting it didn't arise on a protected ground, I'm afraid he'd probably be in error, because Sinha would suggest that this is probably a protected ground. Well – Being beat while people are yelling at him racial slurs about his Chinese ethnicity. Well, Your Honor, first I would – our position is that I don't think that the on account of analysis was done or decision made. I believe it's a finding that the harm itself didn't rise to the level of persecution. Now, on the fact of the racial epithets that were lodged, there was actually only the one incident where – I think that there was one incident where they did say you Chinese don't belong here, you shouldn't be living here. Yeah, you're not supposed to be here, you Chinese. Yeah, but every single incident – I mean, I was on Sinha, and I remember how I had to fight with Judge Berzon about that particular finding, and I lost. So then this case brings it to my attention again. Well, again, I think – I want to sort of stay away from what the board would have done on account of – because it's our position that they did not – they didn't rule on that ground. They ruled on the harm itself was not past persecution. But I would point out to the court, though, that every single incident about which this petitioner testified involved money, stealing wallet, give me your money, knock it on the door, we want your money. I think there is enough evidence in the record to find that the motivation behind these incidents was robberies and money. But – I'm sorry. Go ahead. Well, they – the testimony was that his mother – I think the rock-throwing incidents were in connection with his claim to prospective future harm. And his mother – he talks to his mom twice a week on the phone, and she has said that there has been some incidents. There's some rocks thrown at the church. There had been some churches burned. Nothing – I don't recall specific harm to her church, but I know that she said generally that Christian churches, there have been incidents. And I'm sure there's – the country reports actually document incidents on, you know, Muslim churches. I don't know that there was rock-throwing while he was in the church or that it was part of his past claim. I don't believe that it was. Counsel, can you – That's my recollection. Can you help me? On page 9 of the oral decision AR-52 at – I guess it's line 4, there appears the sentence, as such, respondent has failed to establish a clear probability of persecution and his application for withholding of removal will be denied. Now, the question is whether or not I should read that sentence in the context of the paragraph in which the immigration judge is talking about ability to relocate. So my question for you is, does that statement amount to his ultimate conclusion that we've been wrestling with, or is it just limited to ability to relocate? I believe that it's an overall conclusion. The reason that he has not established a clear probability of future persecution is because the burden didn't shift. He still held the burden to prove relocation within country would not be reasonable under the circumstances. And the immigration judge concludes he hasn't come forth and shown that either, and therefore, he concludes overall he hasn't shown. And I do believe that he made that – his finding of no clear probability of future is twofold, I think. First, he hasn't shown that he – he hasn't shown his perspective here of persecution, that there's a clear probability, and he cites many things for that. Your family is still living there unharmed. There's been isolated incidents. Certainly, he didn't get the presumption of the past harm. And in addition, you haven't shown you couldn't relocate. Well, but just a minute. Let's talk about that relocation determination. I looked very seriously at that relocation determination on 5152, but I guess I'm having a tough time with that finding. Where does he take into consideration the reasonableness of relocating that is required under Knesset? I may say that wrong, K-N-E-Z-E-V-I-C. I'm just an Idaho kid. Knesset versus Ashcroft. I guess I'm having a tough time because I don't think there's anything about taking into account the reasonableness of relocating before he makes that determination. Well, I think that the – any ongoing civil strife, administrative, economic, or judicial infrastructure, geographic limitations, social and cultural restraints, I mean, all kinds of things. I don't see any of that in this. Well, the decision does reflect that the country condition documents of record were consulted, and if you consult those, you'll find that – Well, just all you've got to say is, I consulted? Well – That doesn't seem to me to be what Knesset says. Well, if you look at the country reports, I believe that you'll find there's evidence that Christianity is one of the – I'm sorry. Yeah, Christianity is one of the five government religions. There's massive populations of Christians throughout the country, maybe not where he was residing previously, but there's certainly many pockets where there are the majority, in fact, and it wouldn't be unreasonable to relocate. Let me ask you another question. The IJ seemed to conclude the police were not willing or unwilling to control crime, and the IJ says that that's in part because the petitioner couldn't identify them, but he also notes that the testimony was that the petitioner's father had to pay a bribe even to just get an investigation and then was asked for money thereafter. I don't – you know, I think if you read the testimony – How is that willing? Well, I think if you read the testimony, I don't believe the testimony is that he had to pay a bribe to get investigated. The testimony is pretty vague on what the IJ said. Because that's what I've got to affirm or disaffirm. I don't have to look at the testimony. I read what the IJ said about it. The petitioner characterized – he said that they made an investigation fee. There was a lot of testimony about that. At one point in his testimony, he did characterize them as bribes. He did do that. But there really wasn't a lot of – there wasn't testimony about police procedures and that this is – that you must pay bribes in order to get an investigation. There just wasn't much evidence on that. I think that the – basically the IJ said, you have put forth evidence that you went to the police and nothing was done, but you also – the evidence is that you didn't really – You didn't tell them. You had no idea who – you had no description of the people. There wasn't much they had to go on. And I think the police said when there's not much to – or, excuse me, the IJ said, when there isn't much to go on, it's not unusual for such a crime to not be resolved. There really wasn't much. This petitioner came forth with virtually nothing to investigate. I guess the ultimate of my questions and the reason I've asked so many about this is by me not finding a past persecution finding and then not knowing whether to give the presumption or not and then having right in the middle of this the idea that one could face future persecution merely on the fact that one is a part of a certain group, systematic pattern or practice. And I guess I'm having a tough time knowing whether to help him, which is what I have to do if I know what he said, or say, give me some more help so I know what to sustain or not. Your Honor, and, again, Respondent maintains, I believe, that there was a finding of no past persecution. I think this record reflects that there was no past persecution. I think that finding is in the decision without magic words, but it's there. And I think the record reflects that the decision is grounded in substantial evidence. He is pointing to nothing that would compel a conclusion that there was past persecution. Let me ask you a question on the analysis. Judge Smith asked you about a presumption. There is no presumption here, is there, because the IJ ruled that the asylum application was untimely. Therefore, he doesn't get the benefit of any presumption of past persecution. Well, he could still get it in withholding, but he didn't get it here based on that. Well, where would the presumption arise from, though? I understand that in an asylum case, if he establishes past persecution, then there is a presumption of future persecution, which the government then has to rebut. But we're not looking at asylum. We're looking solely at withholding of removal. There's a mirror provision in the regulations under the withholding regulations regarding the presumption, and it does – it can attach in withholding as well. But if we read the record to show that the IJ did not believe that the incidents that he complained about amounted to persecution, then no presumption arises, does it? That's correct. Okay. I just want to make sure I've got the analysis. Yes. Yes, Your Honor.  And I believe the record – the IJ's decision is well-grounded substantial evidence here of no past persecution. Alternatively, he found that he did not establish clear probability of future persecution. There's no evidence that he put forth that would be unreasonable for him to relocate, and that was his burden. In fact, on his opening brief, this Petitioner ignores that finding by the judge. They don't discuss it at all why that portion of the opinion was wrong, which could be deemed a waiver of that argument. But I believe the country evidence shows it would have been, in fact, reasonable, even though the government didn't have the burden to show that. That's what the record reflects. The IJ's decision states that those reports were consulted. She doesn't have an obligation to parse and discuss every single piece of evidence, but she does indicate she reviewed those documents and that that was her conclusion. And I believe it's granted. Okay. Counsel, you're six minutes over your time. Thank you. But as a result of our questions, I'm going to give your apology. Thank you, Your Honor. Thank you very much. Okay. Ms. Koh, can you help us with the citations that we were wrestling with? Yes, Your Honor. It was 79 and 80, because the discussion regarding the prayer meetings at the church, there was 79, and testimony about the churches being burned down. And on the next page, 80, it talks about throwing of rocks at the church. And those are the incidents that the IJ was discussing at AR 49 and 50 that we were looking at. I believe so, Your Honor. That's how I read the record. Yes. And, Your Honor, if I could move on to the issue about the decision of the immigration judge. Your Honor, we submit that due to the vagueness of the decision, that due process would be served if the case was remanded for a clearer decision. Because we are, at this point, amongst us, guessing what the judge was thinking. And we would think that... Is that it? Or, I mean, if our standard of review is to determine whether substantial evidence supports the denial of relief, and we're quibbling about whether or not the IJ did not speak as articulately in rendering his oral decision as we all would have liked in reviewing the record, why can't we still look to the record to determine whether it evinces substantial evidence to support the denial of relief? Your Honor, I believe there's a distinction from being – between being articulate and where it crosses over to just being vague, Your Honor. And in this case, we also have the due process violation argument. That is on page 14 of our opening brief, where, well, the respondent says that there was not much testimony about the police procedures. Actually, if you look at administrative record 89 and 90, and also the opening brief, the Petitioner's counsel was prevented from developing the record regarding what the police did or did not do. And then as a result, the Petitioner is being penalized, you know, by lack of, you know, record regarding police testimony. I thought your client testified that the police wanted a fee to conduct an investigation. They initially paid a fee, but then on the basis of very little to go on, they came back to him and said, well, if we're going to assign more police officers to this case, we need more money. But his father wouldn't pay the fee. So what additional evidence would have been developed that the IJ refused to enter? Yes. The Petitioner's counsel was trying to ask, what do you think the ñ what do you mean when the police did nothing? Because the respondent is arguing that, oh, the perpetrators couldn't be identified. I mean, they're ñ like, what did the police do? And they were trying to develop the record as ñ Okay. But what ñ you're not answering my question. Yes. What's your proffer? What would counsel have established had the IJ permitted additional questioning on the police investigation? It would have made clear that the police would have not done what they were supposed to do, even with money paid. And there was, you know, both ñ Well, how would they know that? Sorry? How would they ñ I'm sorry. How would they know that? Yeah. I mean ñ How's he competent to testify to that? That's why, based on the facts of the case, they wanted to develop the record, because they wanted to show that there were efforts made by making that initial payment and what would have happened. And the case was never given a chance to develop. I guess what my colleagues are trying to ask, which I had the same question, as it relates to this particular issue, seemed to me that counsel should have asked more foundational questions first in order to get this in. And all the IJ was saying, how do I let this in? How do I know what he's going to do? Why isn't there some foundation? I mean, the IJ even tried to help the attorney. If you look at page 11 and you look at the pages right there about what was going on, IJ was trying to help the attorney put some evidence in. And the attorney wouldn't listen to him. And he wouldn't ask enough foundational questions to get this stuff in. I have a tough time giving the old IJ a problem when he was trying to help and counsel wouldn't do what he wanted him to do. But, Your Honor, based on this, it appeared that it was just objections that were sustained and there was no ñ Probably so for lack of foundation. That's the problem that we're having here is we're trying to understand how your client could have competently offered testimony on what an Indonesian police investigation should have encompassed. How would he know that? Well, he would have been able to ñ What would he have said? I'm still waiting for you to answer my question. What evidence can you proffer to me that would have been admissible at the hearing that would have changed the result? Well, the result was that the judge found that ñ Counsel, you're not answering my question. I just want to know what evidence you have. I don't need to know what the judge would or would not have done. I want to know what evidence you would additionally have offered. Well, the evidence would have been that it is not sufficient to just conclude that it's just a problem with identifying perpetrators. If no further efforts were taken ñ That's a legal conclusion. Right. You're not giving me ñ I think we have your argument in mind. Okay. And I've let you go over it. Okay. The case just argued is submitted. Okay. Thank you. Thank you very much. Thank you. Okay.
judges: Burgess, Tallman, Smith